# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN ZARAGOZA, | ) 1:08cv1506 DLB |
| | ) |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Juan Zaragoza ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his initial application on August 17, 2005, alleging disability since July 13, 2005, due to a right ankle fracture and back pain. AR 14, 51-56. After the application was

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On November 13, 2009, the action was reassigned to the Honorable Dennis L. Beck for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 36-40, 44-48. ALJ William C. Thompson, Jr., held a hearing on March 11, 2008, and denied benefits on April 23, 2008. AR 11-25, 226-244. On August 6, 2008, the Appeals Council denied review. AR 6-9.

Hearing Testimony

ALJ Thompson held a hearing on March 11, 2008, in Stockton, California. Plaintiff appeared with his attorney, Sharon Kelly. Vocational expert ("VE") Stephen Schmidt also appeared and testified. An interpreter assisted at the hearing. AR 226.

Plaintiff testified that he was 43 years old at the time of the hearing and completed the sixth grade in Mexico. AR 230. He cannot speak English. AR 230. Plaintiff is married and has two children. AR 231. He last worked on July 13, 2005, when he was working in construction and fell off a roof. AR 233. Plaintiff has had five surgeries on his shoulder, knee and ankle. AR 233. Plaintiff thought that he could walk for a block and stand for 15 to 20 minutes. He also has trouble sitting and using his right side. He thought he could lift a gallon of milk with his right hand, with difficulty. AR234-235. Plaintiff didn't think he could return to a past position as a cannery worker because of his pain and because he cannot stand, walk or sit. AR 238. Plaintiff takes pain medication, with no side effects. He has headaches "all day" and has symptoms of depression for which he sees a psychiatrist. AR 237. He has seen Dr. Hobby twice and was not taking medication for depression. AR 239. Plaintiff explained that he is very stressed, feels desperate and doesn't want to converse with anyone. AR 238.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and past work, who could not communicate in English. This person could lift 20 pounds occasionally and 10 pounds frequently, stand and walk in combination for at least six hours and sit for at least six hours. This person could occasionally kneel, crawl and climb stairs, but could not work at heights. This person would also be limited to occasional reaching with the right dominant upper extremity and work involving "relatively" simple instructions. This person would also have "relatively restricted" contact with the public. The VE testified that this person

could not perform Plaintiff's past work but could perform the positions of semiconductor worker, assembler and sewing operator. AR 240-241.

If Plaintiff testified truthfully about his limitations, an individual with those limitations could not perform work. AR 242.

Plaintiff's attorney asked the VE consider the three jobs identified and change the six hours of sitting, standing and walking to a preclusion to standing more than two hours per day. The VE testified that this limitation would preclude the semiconductor and assembler positions but would not have any impact on the sewing machine operator position. AR 242. The sewing machine operator position would not be compatible with a sit/stand option, however. AR 242.

Finally, the VE testified that if an individual had the limitations identified by Dr. Hobby, this person could not perform any work. AR 243.

Medical Record[3]

Plaintiff saw Robert M. Cash, M.D., on June 21, 2006. Dr. Cash noted that Plaintiff was having "fairly significant psychological problems," with Plaintiff's wife reporting "significant depression, feelings of worthlessness and mood swings with some violence." Dr. Cash diagnosed persistent polytraumatic injuries with possible post traumatic stress-like symptoms of depression and recommended a psychological assessment. AR 150-151.

In his August 1, 2006, treatment notes, Dr. Cash noted Plaintiff's complaints of persistent feelings of depression and his interest in seeking counseling. AR 146. Dr. Cash believed that Plaintiff would require counseling. Plaintiff continued to be unemployable. AR 147.

Plaintiff saw Amos K. Hobby, Jr., Ph.D., on August 31, 2006. Plaintiff was unable to become physically comfortable in the office and appeared anxious, tearful and upset while relating his industrial injury. He explained that as he fell from the roof, he was afraid he was going to die. Plaintiff was taking Ambien for sleep difficulties, though it was not helping. Plaintiff reported nightmares, headaches, migraines that last all day with no medication for relief, weight loss and regain, lethargy, helplessness, memory problems, attention problems, "location

---

[3] Plaintiff's argument relates to his mental health impairments and therefore only pertinent medical records are summarized.

fear," anger issues and feeling "bereft" of his life's purpose after his loss of breadwinner abilities. AR 130-131.

Dr. Hobby diagnosed major depressive disorder, single episode-moderate, post traumatic stress disorder ("PTSD"), anxiety disorder not otherwise specified, and a pain disorder associated with psychological factors and general medical condition. Plaintiff's most obvious symptoms related to PTSD. Dr. Hobby referred Plaintiff to Dr. Cash for "possible treatment" with psychotropic medications for PTSD and depression. He also recommended ongoing psychotherapy and requested approval and authorization to see Plaintiff weekly. If psychotherapy was authorized, Dr. Hobby noted that he "would be happy to work with" Plaintiff. AR 131.

On December 13, 2006, Dr. Cash saw Plaintiff for assessment of his right shoulder. He noted that Plaintiff saw a therapist for depression and anxiety and would like to return for another session. Dr. Cash diagnosed right shoulder and knee injuries, which were slowly resolving, possible depression and persistent pain. He recommended evaluation by a psychotherapist or psychiatrist "to provide recommendations for treatment of his depression." Dr. Cash opined that Plaintiff was still unable to work and was not yet permanent and stationary. AR 134.

On May 15, 2007, State Agency physician Brian Ginsburg, M.D., opined that Plaintiff's mental impairment was severe but would allow for simple, routine tasks. AR 178.

On May 27, 2007, Plaintiff saw James Scaramozzino, Ph.D., for a consultive psychiatric examination. Plaintiff reported that he could not work because of his leg injury. He complained of a depressed mood with no interest in pleasurable activities, episodes of crying, problems with memory and concentration, headaches, fatigue, sleep disturbances, loss of appetite, becoming easily upset and self isolating. AR 171. Plaintiff explained that he was feeling inadequate, overwhelmed and helpless because he could not work. His wife reported that he was irritable, short tempered and depressed most of the time. AR 172.

On mental status examination, Plaintiff's attitude was hopeful about securing income to "augment his situation." He also wanted to go back to work, though it was unclear what his next step would be since his medical condition had not resolved. His mood was depressed and his

affect was tearful. Plaintiff was oriented to time, person and place and his intellectual functioning appeared to be within the average range. His recent and remote memory were intact and his concentration was within normal limits. Plaintiff's judgment and insight were within normal limits. He was able to perform a simple three step command successfully. Plaintiff reported that during a typical day, he wakes up, eats breakfast, showers, takes his medication and goes to doctor's appointments. Depending on his pain level, he helps out with household chores and errands and attempts to walk. AR 174.

Dr. Scaramozzino diagnosed depressive disorder, not otherwise specified, and pain disorder associated with both psychological factors and a general medical condition. He noted that Plaintiff responded to questions in an open and honest manner and did not appear to be exaggerating. His symptom severity was within the moderate range. He was willing to receive treatment for his disorder and has demonstrated compliance with treatment in the past. There was a fair likelihood that his condition would improve in the next 12 months because his psychological issues were primarily related to reported medical problems that appear unresolved. AR 174-175.

Dr. Scaramozzino opined that Plaintiff had a fair ability to understand and remember very short and simple, as well as detailed, instructions. His ability to maintain concentration and attention was fair. Plaintiff's ability to accept instructions from a supervisor and respond appropriately varied because even though he has the appropriate skills to perform work, his depression and pain disorder limit his ability to respond. His ability to sustain an ordinary routine without special supervision was good, though his ability to complete a normal workday/workweek without interruptions was fair because of his unresolved pain issues and depressive symptoms. His ability to interact with coworkers was fair and his ability to deal with changes in the workplace was fair. There was a fair likelihood of emotional deterioration in the work environment because of pain. AR 175-176.

State Agency physician Evelyn Aquino-Caro, M.D., completed a Psychiatric Review Technique form on June 15, 2007. She opined that Plaintiff was mildly limited in activities of daily living. He had moderate difficulties in maintaining social functioning and in maintaining

concentration, persistence or pace. AR 179-189. In a Mental Residual Functional Capacity Assessment, Dr. Aquino-Caro opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions. He would be able to understand and remember work locations and procedures of a simple, routine nature involving one to two step instructions, maintain concentration and attention in two hour increments, sustain an 8 hour day and 40 hour week, relate to and accept direction from supervisors and remain socially appropriate with co-workers and the public without becoming distracted. He could also travel, avoid workplace hazards, respond to changes and set realistic goals independently. AR 190-192.

On March 10, 2008, Plaintiff met with Dr. Hobby for a second time. Plaintiff appeared to be more emotional than he was at the last visit. He was oriented to time, person and place and appeared "quite anxious, tearful and upset." Plaintiff reported severe headaches, difficulty sleeping, nightmares, distractibility, severe irritability, bouts of anger and tearfulness, disorientation, suicidal ideations without a plan, anxiety, depression, severely decreased libido and feelings of hopelessness, worthlessness and a sense of great shame. Although he "was once a patient man," he "now continues in a near constant state of irritability and loses his temper quite frequently." Plaintiff reported that he is sometimes so anxious that he has difficulty breathing. AR 216-217.

Dr. Hobby explained that he diagnosed Plaintiff with various mental disorders in 2006 and requested authorization for further treatment, but authorization was never granted. Plaintiff now "gives evidence of deepened depression and further difficulties with life" and Dr. Hobby increased the severity of his depressive diagnosis to severe. Dr. Hobby referred Plaintiff back to Dr. Cash and noted that he was greatly concerned for Plaintiff. Dr. Hobby believed that Plaintiff was seriously impaired and would be glad to provide psychotherapy to Plaintiff should it be authorized. Dr. Hobby opined that Plaintiff's ability to work was "non-existent." AR 217.

In a medical report completed the same day, Dr. Hobby noted that he had not provided treatment to Plaintiff but had met with him twice for the purpose of psychological diagnosis. His response to treatment "would be good with approval." AR 218. Dr. Hobby opined that Plaintiff's abilities to relate to co-workers, deal with the public, interact with supervisors, deal

6

with work stress, function independently and maintain attention and concentration were poor. His ability to understand, remember and carry out complex, detailed, and simple instructions was poor. Plaintiff's abilities to behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability were poor. His abilities to follow work rules, use judgment and maintain his personal appearance were fair. AR 219-220.

<u>ALJ's Findings</u>

The ALJ determined that Plaintiff had the severe impairments of status-post right knee and ankle injuries, degenerative changes of the right shoulder with a history of impingement syndrome, and depressive disorder. AR 16. Despite these impairments, Plaintiff retained the residual functional capacity ("RFC") to perform light work, with occasional overhead reaching with the right, dominant arm and occasional kneeling, crawling and stair climbing. Plaintiff could not climb ladders or scaffolding or work at heights. Plaintiff was also limited to work involving simple instructions with limited public contact. AR 17. With this RFC, the ALJ found that Plaintiff could not perform his past relevant work but could perform other work that exists in significant numbers in the national economy. AR 23-24.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the

Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**<u>REVIEW</u>**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (status-post right knee and ankle injuries, degenerative changes of the right shoulder with a history of impingement syndrome, and depressive disorder) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) retains the RFC to perform a significant number of other jobs in the national economy. AR 16-24.

Here, Plaintiff argues that the ALJ erred by not adopting Dr. Hobby's opinions.

---

[4] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

**DISCUSSION**

Plaintiff argues that the ALJ incorrectly adopted the opinion of Dr. Aquino-Caro, the State Agency physician, over the opinion of Dr. Hobby. In making this argument, Plaintiff characterizes Dr. Hobby as a treating physician.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th

Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id.* at 751-52.

Here, the ALJ determined that Plaintiff could perform simple instructions with limited public contact. AR 17. In so finding, he accepted the opinions of State Agency physicians Dr. Aquino-Caro and Dr. Ginsburg. AR 178, 190. The ALJ rejected the opinion of Dr. Hobby, as well as the opinion of consultive examiner Dr. Scaramozzino to the extent it differed from the RFC finding. AR 22-23.

Plaintiff characterizes Dr. Hobby as a treating source and argues that his opinion therefore should have been given greater weight. Plaintiff is correct that a treating physician's opinion is generally afforded greater weight, yet it is unlikely that Dr. Hobby can be characterized as a treating source. Although Dr. Hobby met with Plaintiff twice over the span of almost two years, he did so for purposes of gaining authorization to provide treatment to Plaintiff. AR 131, 217. When he met with Plaintiff the second time, he specifically noted that he had requested authorization, in the context of Plaintiff's work-related injury action, to treat Plaintiff in 2006, but authorization was not provided. AR 217. In fact, when Dr. Hobby completed the March 2008 questionnaire to which Plaintiff points, Dr. Hobby wrote "N/A" in response to a request for "treatment provided by you." AR 218.

Given the limited relationship between Plaintiff and Dr. Hobby, it is unlikely that Dr. Hobby would be considered a treating source. *See eg.*, 20 C.F.R. § 404.1502 (defining a treating source as one who has an "ongoing treatment relationship"); 20 C.F.R. § 404.1527(d)(2) (treating sources are likely able to provide a "longitudinal picture" of medical impairment). The ALJ also recognizes this limited relationship, noting that Dr. Hobby "acknowledges that he had never treated the claimant and had interviewed him on only two occasions." AR 22.

Even if Dr. Hobby could be considered a treating source, the ALJ provided specific and legitimate reasons to properly reject his opinion. After setting forth Dr. Hobby's two letters in detail, the ALJ rejected his opinions mainly because Dr. Hobby did not support his limitations with any mental status examination findings or psychological test results. AR 22. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (a lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion). Indeed, Dr. Hobby did not perform a full mental status examination during either interview with Plaintiff, nor did he support his March 2008 limitations with reference to any specific findings. AR 130-131, 216-221. As the ALJ explained, "Dr. Hobby simply opined that claimant's ability to work was non-existent and completed a check-box form reflecting serious limitations in multiple areas of functioning." AR 22. *Id.* (a brief and conclusory form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion).

To the extent that Dr. Hobby noted his observations of Plaintiff's mood and demeanor, the ALJ found that they did not support the severity of Dr. Hobby's limitations. "He found the claimant was emotional but further found him to be fully oriented, without psychotic ideation, hallucinations, or ideas of reference." AR 22. The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Instead of supporting his limitations with examination findings or test results, Dr. Hobby relied mainly on Plaintiff's subjective reports. The ALJ explained, "[o]ther than a recitation of the claimant's reported symptoms, Dr. Hobby's written statements provide little insight into his conclusions regarding [Plaintiff's] limitations." AR 22. An ALJ may reject the treating physician's opinion because it was based on the claimant's discredited subjective complaints. *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th 1989). Plaintiff has not challenged the ALJ's finding that his subjective complaints were less than fully credible. *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion based to a large extent on claimant's own accounts of symptoms and limitations may be disregarded where those complaints have been properly discounted).

Plaintiff further argues that the ALJ's finding that Dr. Hobby failed to support his limitations with objective findings was a "red herring" because Dr. Aquino-Caro did not meet with Plaintiff or perform any testing. He therefore contends that the ALJ should not have adopted Dr. Aquino-Caro's opinion because her opinion, too, was not based on objective testing. This argument, however, ignores the inherent differences between medical sources and the weight that should be afforded each source based on these differences. In other words, the ALJ is entitled to give lesser weight to a treating source who fails to cite objective evidence even though a non-examining source, by definition, did not examine Plaintiff or perform any testing. It is simply part of the hierarchy of medical sources.

In a somewhat contradictory argument, Plaintiff contends that the ALJ improperly "rejects most of the findings of Dr. Aquino-Caro." Opening Brief, at 5. He points to Dr. Aquino-Caro's findings that Plaintiff had moderate difficulties in maintaining social functioning and maintaining concentration, persistence and pace. However, the ALJ did not reject these findings and instead incorporated them into his determination that Plaintiff was limited to simple tasks with limited public contact. AR 23. Indeed, Dr. Aquino-Caro specifically determined that despite Plaintiff's limitations, he could understand, remember and perform tasks of a simple, routine nature involving one to two step instructions. AR 190-192.

Plaintiff also suggests that Dr. Scaramozzino's findings that Plaintiff was fairly limited in numerous areas contradicts the ALJ's RFC finding. In light of the benign nature of Dr. Scaramozzino's mental status examination, the ALJ interpreted these findings to suggest "moderate limitations."[5] As the ALJ explained, Plaintiff was oriented to time, person and place and his intellectual functioning appeared to be within the average range. His recent and remote memory were intact and his concentration was within normal limits. Plaintiff could perform a simple three-step command successfully. AR 22, 174. The ALJ therefore concluded that Plaintiff could perform simple, repetitive tasks with limited public contact. AR 22-23. *See eg.,*

---

[5] Dr. Scaramozzino characterized the severity of Plaintiff's symptoms as moderate. AR 175.

*Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007) (mild to moderate limitations do not necessarily support a finding of disability).

The ALJ's RFC was therefore supported by the opinions of Dr. Scaramozzino, Dr. Aquino-Caro and Dr. Ginsburg. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultive examiner's opinion is substantial evidence); *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (opinion of nonexamining physician can be substantial evidence where it is consistent with other evidence in the record).  Accordingly, the ALJ's RFC finding is supported by substantial evidence and is free of legal error.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Juan Zaragoza.

IT IS SO ORDERED.

Dated:  **April 5, 2010**              /s/ **Dennis L. Beck**
                                           UNITED STATES MAGISTRATE JUDGE